IN THE UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

_____

No. 97-31321
Summary Calendar
_____


AG 1824 MARINE INSURANCE,

                                        Plaintiff-Appellant,

v.

UNITED KINGDOM MUTUAL P&I CLUB; ET AL,

                                        Defendants,

UNITED KINGDOM MUTUAL P&I CLUB,

                                        Defendant-Appellee.

_____

Appeal from the United States District Court
for the Eastern District of Louisiana
(96-CV-3540-F)
_____

August 26, 1998

Before KING, HIGGINBOTHAM, and DAVIS, Circuit Judges.

PER CURIAM:[*]

     Plaintiff-appellant AG 1824 Marine Insurance appeals the

district court's order dismissing its direct action claim against

the indemnity organization United Kingdom Mutual P&I Club.  The

district court dismissed the claim because it found that the

Louisiana Direct Action Statute, LA. REV. STAT. ANN. § 22:655

_____

     [*]  Pursuant to 5TH CIRCUIT RULE 47.5, the court has determined
that this opinion should not be published and is not precedent
except under the limited circumstances set forth in 5TH CIRCUIT
RULE 47.5.4.

(West 1995), did not apply.  We affirm.

## I.  BACKGROUND

In September 1995, a cargo of bulk sugar in good order and condition, owned by E.D. & F. Mann Sugar (ED&F) and insured by AG 1824 Marine Insurance (AG), left Montevideo, Uruguay, bound for New Orleans, Louisiana.  The sugar was aboard the M/V NOVODRUZHESK, a vessel owned by Baltic Shipping (Baltic).  Baltic's insurance provider was United Kingdom Mutual P&I Club (UK Club).

While en route to New Orleans, outside United States territorial waters, and unbeknownst to the crew, heavy fuel oil leaked into the hold containing the sugar.  Shortly after its arrival in New Orleans, the ship was unloaded.  During the unloading, it was discovered that a substantial quantity of the sugar had been contaminated by the fuel oil.

ED&F had sold the sugar to Domino Sugar Company, who exercised their right of refusal upon this discovery.  ED&F filed a claim with its underwriter, AG 1824, who paid the damages, and together they hired a surveyor to ascertain the nature, cause, and extent of the loss.  In an attempt to mitigate the damages, efforts were made to segregate the contaminated from the sound sugar.  It soon became apparent to ED&F, however, that the cargo was valueless, and it abandoned the sugar to the vessel owner.

AG 1824 then filed suit against Baltic and UK Club to recover its losses under the Louisiana Direct Action Statute (LDAS), LA. REV. STAT. ANN. § 22:655 (West 1995).  UK Club filed a

2

motion to dismiss the claim against it, and the district court granted the motion, finding that the LDAS was not applicable in this instance.[1]  AG 1824 appeals.

## II.  STANDARD OF REVIEW

The facts in this case are undisputed, leaving only questions of law, the district court's resolution of which we review de novo.  <u>See</u> <u>Heartland Fed. Sav. & Loan Ass'n v. Briscoe Enters., II (In re Briscoe Enters., II)</u>, 994 F.2d 1160, 1163 (5th Cir. 1993).

## III.  DISCUSSION

The LDAS allows an injured party to maintain a direct action against an insurer for the tortious conduct of the insured provided that any one of the following three conditions has been satisfied: (1) the insurance policy was written in Louisiana, (2) the insurance policy was delivered in Louisiana, or (3) the accident or injury occurred in Louisiana.  <u>See</u> La. Rev. Stat. Ann. § 22:655 (West 1995); <u>Webb v. Zurich Ins. Co.</u>, 205 So. 2d 398, 402-07 (La. 1967); <u>see also</u> <u>Landry v. Travelers Indem. Co.</u>, 890 F.2d 770, 772 (5th Cir. 1989).  All parties agree that the policy was neither written nor delivered in Louisiana and thus that the

---

[1]  The case proceeded to trial against Baltic, and Baltic contended that ED&F and AG 1824 failed to mitigate their damages by not selling the cargo for salvage.  The district court found, however, that the cargo was valueless and that ED&F and AG 1824 acted reasonably under the circumstances.  The court therefore entered judgment against Baltic for the fair market value of the damaged sugar plus the survey fees and expenses involved in attempting to salvage the cargo.  Baltic claims insolvency and has not paid any portion of the judgement.

3

accident or injury must have occurred in Louisiana for the LDAS to apply.

AG 1824 contends that the district court construed the LDAS too narrowly, failing to permit the statute to accomplish its intended purpose.  AG 1824 argues (1) that the injury occurred in Louisiana because Baltic breached its duty to deliver the cargo in sound condition upon arrival in New Orleans and (2) that the damage to the cargo had an impact in Louisiana, either of which would satisfy the requirements for application of the LDAS. Additionally, AG 1824 argues that the LDAS should be interpreted as broadly as the United States Constitution allows, which would allow this action to survive.

While it is well settled that the LDAS "is remedial and should be liberally construed to accomplish its purpose of affording a person suffering loss or damage a direct action against a tortfeasor's insurer," Quinlan v. Liberty Bank & Trust Co., 575 So. 2d 336, 353 (La. 1990), the limits of the LDAS are equally well established.  Courts have been given several opportunities to extend the LDAS's reach to the bounds of the Constitution and have declined to do so.  See, e.g., Esteve v. Allstate Ins. Co., 351 So. 2d 117, 118, 120 (La. 1977) (rejecting an argument for a broad interpretation of the LDAS that would encompass accidents outside Louisiana where the policy was neither delivered nor written in Louisiana); Kirchman v. Mikula, 258 So. 2d 701, 702-03 (La. Ct. App. 1972) (rejecting an argument to follow New York in allowing a direct action against an insurer

4

without meeting the above requirements of the LDAS); see also Landry, 890 F.2d at 773 (rejecting an argument to extend the LDAS to defendant insurer solely upon the basis that the necessary minimum contacts with the forum exist to create personal jurisdiction); Signal Oil & Gas Co. v. Barge W-701, 654 F.2d 1164, 1175 (5th Cir. Unit A Sept. 1981) (same).

The damage to the sugar caused by the leakage of fuel oil into the hold containing the sugar did not occur in Louisiana, and the harmful impact that this accident or injury undoubtedly had in Louisiana is insufficient to satisfy the LDAS. See Morse v. Hartford Cas. Ins. Co., 301 So. 2d 741, 744 (La. Ct. App. 1974) (holding that an out-of-state injury to a Louisiana resident does not bring an action within the purview of the LDAS, citing Grinnell v. Garrett, 295 So. 2d 496 (La. Ct. App. 1974), and Kirchman, 258 So. 2d at 703); see also Hunter Douglas Metals, Inc. v. New Bay Fin. Shipping Co., Civ. A. No. 88-3470, 1989 WL 237754, at *1 (E.D. La. Dec. 21, 1989) ("While the injury clearly had an impact in Louisiana, it did not arise in Louisiana."); cf. Vincent v. Penrod Drilling Co., 372 So. 2d 807, 811 (La. Ct. App. 1979) (stating in a case involving an injured seaman, "To invoke the [LDAS] in a maritime action for injuries sustained on the high seas, the insurance policy in question must have been issued in or delivered in Louisiana."). Additionally, to construe the LDAS to apply where an impact from the injury is felt in Louisiana would be inconsistent with the decisions of the courts of Louisiana not to extend the LDAS to the bounds of the

Constitution.

In order to maintain its action against UK Club, AG 1824 contends that the relevant accident or injury in this case was suffered when Baltic breached its duty to deliver the cargo in sound condition by delivering contaminated sugar in New Orleans. However, for the LDAS to apply, the injury occurring in Louisiana must sound in tort. See Holland Am. Ins. Co. v. Succession of Roy, 777 F.2d 992, 995 (5th Cir. 1985). In arguing that this injury sounds in tort, AG 1824 cites for the first time in its reply brief only cases determining the priority of maritime liens and holding that damage to cargo sounds both in tort and contract. See Associated Metals & Minerals Corp. v. Alexander's Unity MV, 41 F.3d 1007, 1012 (5th Cir. 1995) (citing The John G. Stevens, 170 U.S. 113 (1898)); Oriente Commercial, Inc. v. American Flag Vessel, M/V Floridian, 529 F.2d 221, 222-23 (4th Cir. 1975) (same). However, these cases refer only to the sources of the duty to carry and deliver the goods in sound condition and do not alter the fact that the actual tort at issue--the leakage of the fuel oil--here arose entirely outside of Louisiana. Assuming that the breach of the duty to carry and deliver the cargo in sound condition is tortious, the breach of this duty occurred once the fuel oil leaked into the sugar hold and not after the vessel arrived in port. Accord Hunter Douglas Metals, Civ. A. No. 88-3470, 1989 WL 237754, at *1 (holding that a loss of cargo bound for New Orleans due to a vessel sinking did not arise in Louisiana and therefore did not fall under the

6

LDAS).  Therefore, no accident or injury allowing invocation of the LDAS occurred in Louisiana.

### IV.    CONCLUSION

For the foregoing reasons, we AFFIRM the district court's order of dismissal.